PORTALATÍN, PLAINTIFF AND APPELLEE, v. NORIEGA, DEFENDANT AND APPELLANT.

## APPEAL from the District Court of Ponce in an Action for Damages.

### No. 3184.—Decided November 25, 1924.

MOTOR VEHICLES — DAMAGES — NEGLIGENCE — MINOR — LICENSE — DILIGENCE OF FATHER.—When a father is sued for damages caused by the negligence of his minor son in driving an automobile the defense that the father used all of the diligence of a good father of a family should refer to the acts that caused the damages and is not proved by mere evidence that the father sent his son to a school or university, or that the minor had been licensed by the government, after examination, to drive motor vehicles.

ID.—ID.—ID.—EMPLOYER—LIABILITY.—The father of a minor who caused damages through negligence in driving an automobile is not exempt from liability because the accident occurred while the minor was acting as employee of another. Either the employer or the father, at the election of the person damaged, is liable under subdivision 4 of section 1804 of the Civil Code.

ID.—ID.—ID.—CONTRIBUTORY NEGLIGENCE.—A person, without his fault, placed in a situation of imminent danger, is not to be held to the exercise of the same care and circumspection that prudent persons would exercise where no danger is present. He is not guilty of contributory negligence, as a matter of law, because he fails to make the most judicious choice between hazards presented or would have escaped injury if he had chosen differently, especially if he has lost the sight of one eye. The question in such case is not what a careful person would do under ordinary circumstances, but what would he be likely to do, or might reasonably he expected to do, in the presence of such existing peril.

ID.—ID.—ID.—One who drives at high speed on a public road where there are pedestrians is not free from negligence because he sounds the horn, especially when the warning is given when he is so near the pedestrians that it rather tends to create a panic among them.

ID.—ID.—ID.—The duty to have an automobile under reasonable control naturally implies that the driver shall exercise the power of control whenever reasonably necessary for the avoidance of injuries to others. If a pedestrian is crossing his course in such proximity that a collision is possible, the speed of the car should be slackened. Moreover, the circumstances may be such, as when a collision is imminent, that reasonable care in the operation of the machine

requires the stopping thereof. The driver of an automobile does not necessarily fulfil his duty by proceeding very slowly, but he should bring his machine to a stop if it is necessary in order to prevent an injury to a pedestrian.

The facts are stated in the opinion.

*Mr. F. B. Fornaris* for the appellant.

*Mr. D. Sepúlveda* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

On April 30, 1922, on the road between Ponce and Santa Isabel, Jenaro Noriega y Pattern, who was not eighteen years of age, was driving a Buick automobile which struck plaintiff José Portalatín and injured him seriously, among the injuries being fractures of the humerus of his left arm and of the femur and tibia of his left leg.

On these facts and under section 1804 of the Civil Code the plaintiff brought an action for damages directly against the minor's father, Cándido Noriega y González, alleging that the said minor was the legitimate son of the defendant; that he was under his *patria potestas;* that he had not been emancipated; that he lived with his father, and that the accident occurred solely and exclusively because of the inexperience, carelessness and negligence of the driver of the automobile, Jenaro Noriega y Pattern, who did not exercise the necessary prudence and caution in the operation of the said automobile, but drove it at a great rate of speed without sounding the horn or giving any other warning.

The defendant answered the complaint, charging the accident exclusively to the fault and negligence of the plaintiff, and also alleged in his defense (1) that the defendant employed all of the diligence of a good father of a family to avoid the damage and (2) that at the time of the accident Jenaro Noriega Pattern was an employee of the firm of Successors of Noriega & Alvarez and was driving an automobile belonging to the said firm in the course of its business, accompanied by another employee and one of its partners.

After trial the court below rendered judgment against the defendant for the sum of $1,150 and the costs. The defendant took the present appeal and in his brief assigns four errors. The first two refer to the special defenses set up by the defendant in his answer and the others to the weighing of the evidence by the trial court.

The appellant maintains that as he showed that he was a diligent and good father of a family, the court erred in construing sections 1803 and 1804 of the Civil Code and making him liable for the acts of his minor son by reason of the accident. As a basis for this contention the appellant alleges the care and vigilance that he exercised toward his son, causing him to attend the common and superior schools and thereafter sending him to an American college to study a profession. It may be said generally that all of this is an elementary duty of every father of a family and is not a sufficient showing. By its terms the statute requires for relieving the father of liability that it be proved that he "employed all the diligence of a good father of a family to avoid the damage." The final subdivision of section 1804 of the Civil Code. Something must have been done in connection with the damage itself, and the facts of this case, which we shall discuss, do not actually show the diligence of the father to avoid the damage.

It is alleged also that the appellant did not consent to his son's driving motor vehicles on the public roads until the Government of Porto Rico had authorized him to do so by license after he had passed the corresponding examination; and the appellant argues that nothing else was necessary to assure him that his son was competent to drive automobiles when it is the duty of the government to take care that those who engage in that occupation may not be a danger to the community. Against this argument it is sufficient to say that the minor was not eighteen years of age and for this

reason the matter is the reverse of what the appellant assumes. The government would not have licensed the said minor to drive motor vehicles without the appellant's written consent to be held liable as father of the minor for his violations of the law and the damages that he might cause.

Subdivision (c) of section 5 of Act No. 75 of April 13, 1916, to regulate the operation of motor vehicles reads as follows:

"(c) No such license shall be issued to a person less than sixteen years of age. A license may be issued to a person between sixteen and eighteen year of age to drive his own machine or that belonging to the person under whose *patria potestas* he may be; *Provided,* That these persons (*sic*) shall file a consent in writing with the Commissioner of the Interior making them responsible for all fines that may be imposed on the driver for any violations of this Act, and for all damages he may cause. Except as herein provided no license shall be issued to any person under eighteen years of age."

This provision of law is based logically on the danger that may follow always the issuance of licenses for driving motor vehicles to persons under eighteen years of age because of the lack of mental faculties sufficient for the exercise of good judgment, inasmuch as in most cases there is not the necessary maturity, only attained with years, for acting in accordance with the requirements of momentary circumstances or the most ordinary prudence. And in order to be consistent, if the due diligence of a good father of a family may be judged by the license given by the government to one who passes an examination showing his ability to drive automobiles, that showing would be equivalent to a certificate of immunity for all kinds of accidents and the result would be an absurdity. Neither good sense nor the law contemplates such a proposition.

The case of *Schultz* v. *Morrison*, 91 Misc. R. 248, 154 N. Y. Supp. 257, is one that illustrates the reason of the lawmakers for forbidding the driving of motor vehicles by persons under eighteen years of age, as follows:

"The object and purpose of the statute is to promote the safety of those traveling the public highways. While a motor vehicle is not, in and of itself, to be deemed a dangerous machine, nevertheless it becomes such in the hands of a careless and inexperienced person. The statute has, in effect, so declared when it forbids its operation by persons under the age of eighteen. It, in substance, declares that such persons do not possess the requisite care and judgment to run motor vehicles on the public highways without endangering the lives and limbs of others." Huddy on Automobiles, Fifth Edition, p. 266, note 17.

As a question of fact it was proved that the minor had been fined for speeding prior to the accident and that the appellant knew of it and could have exercised the due diligence of a good father of a family to prevent further liability by revoking the permit that he had given to his son for driving the automobile.

Under the second assignment the appellant alleges that the court below erred in holding him responsible for the damages caused by his minor son while acting as employee of the firm of Successors of Noriega & Alvarez by driving the automobile on business of the said firm and discharging his duties as such employee.

The appellant's proposition tends to show that Successors of Noriega & Alvarez and not the appellant were responsible for the damages caused by the minor. But assuming this defense to be true, it would be of no avail in this case. In order to give it legal effect it should have been alleged that Successors of Noriega & Alvarez were the only party responsible for the acts of the minor as their employee. No such allegation was made and, besides, it would have no support under the law. What the appellant really means is that by virtue of the provisions of subdivision 4 of section 1804 of the Civil Code Successors of Noriega & Alvarez were equally liable for the damages caused by the minor, independently of the liability imposed upon

the father by subdivision 2 of section 1804, which reads in part as follows:

"Sec. 1804.—The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

"The father, and on his death or incapacity the mother, is liable for the damages caused by the minors who live with them.

"       *       *       *       *       *       *       *

"Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employees in the service of the branches in which the latter may be employed or on account of their duties."

It follows, therefore, that in case of the liability of two persons for an accident like the one under consideration the injured person may include both of them in his complaint or elect one of them and sue him separately for the full amount of the liability. Hence, in electing the appellant as liable for the damages caused by his minor son who lived with him and was under his *patria potestas,* ignoring the minor's relations as employee of the firm, the plaintiff exercised a right conferred upon him by the statute.

The other assignments refer to the same matter, that is, the weighing of the evidence by the trial court.

The evidence was contradictory and the trial judge adjusted the conflict in favor of the plaintiff. It is true that the trial judge did not include his findings of fact in the opinion, but in any event, even admitting the theory of the defendant that the accident was due to the fact that the plaintiff attempted to cross the road at the moment when the automobile was approaching the place, the other facts of the case show that this alone does not relieve the defendant of responsibility. It was shown that the plaintiff had been blind of one eye since childhood and that he was walking along the road with four other persons at the time of the accident. These persons formed two groups, three in front and the other two a short distance behind. The evidence, although not free from contradiction, tends to show

that both groups were walking along the right side of the
road. Of the group in front the plaintiff was nearest the
middle of the road. It also appears that the automobile
was running at great speed and that the driver did not
reduce its speed upon approaching the group of pedestrians.
This last fact is deduced from the evidence as a whole and
clearly from the testimony of Ismael Quiñones, a witness
for the defendant who was one of the occupants of the car
at the time of the accident. Under such circumstances and
the driver failing to give reasonable warning in advance of
the approach of the automobile, as it appears to have been
given at the very instant when the driver attempted to pass
among the pedestrians, creating excitement and panic among
them, it is evident, therefore, that the plaintiff, who had
lost the sight of his left eye, was placed in a position of im-
minent danger, and it is a natural inference that owing to his
physical defect he could not exercise the same degree of
care as did his companions for escaping from the danger
and could not be expected to exercise the same degree of
care and circumspection as a normal person would under
similar or identical conditions.

In substance, what can be deduced more certainly from
the facts of this case is that the physical defect of the plain-
tiff made it impossible for him instantly to take in the
dangerous situation in which he was placed by the driver
of the automobile. The plaintiff perhaps was slow in look-
ing rearward, inasmuch as if he turned to the left in order
to see the approaching automobile with his right eye, he
had to turn around completely and put himself almost in
front of the automobile. Consequently, the conduct of the
plaintiff in attempting to cross the road in order to escape
the imminent danger or in acting in such a way that he
could not escape can not be considered, as a matter of law,
as involving contributory negligence on the part of the
plaintiff, for the question is not what a prudent person
would have done under normal circumstances, but what

such a person would have done in the face of immediate danger. In connection with similar situations the following citations are made in *González* v. *Fajardo Development Co.,* 30 P.R.R. 169:

" 'A person, without his fault, placed in a situation of imminent danger, is not to be held to the exercise of the same care and circumspection that prudent persons would exercise where no danger is present. He is not guilty of contributory negligence, as matter of law, because he fails to make the most judicious choice between hazards presented or would have escaped injury if he had chosen differently. The question in such case is not what a careful person would do under ordinary circumstances, but what would he be likely to do, or might reasonably be expected to do, in the presence of such existing peril.' II Bailey Personal Injuries (2nd ed.) p. 1461.''

" 'A person placed by the negligence of another in a place of sudden danger, and who, under the influence of great terror does an act which may contribute to his injury or death, cannot be charged with contributory negligence, so as to bar a recovery by him.' *Consolidated Traction Co.,* v. *Scott,* 55 Am. St. Rep. 620.''

Apart from the position of immediate danger in which the negligence of the driver of the automobile placed the plaintiff, it also appears that the road was broad and straight so that the driver could see distinctly at a distance the pedestrians at that place. This makes it evident that the driver could have avoided the accident by reducing the rate of speed or stopping the automobile, for the warning that he gave when already so near the pedestrians was not sufficient and was useless, given the speed of the automobile. It would be a subversive theory to hold, as contended for by the appellant at the trial, that a driver or chauffeur is not bound to reduce the speed of an automobile on a public road when meeting pedestrians under any circumstances. According to the appellant's theory the pedestrians are bound to take care of themselves and exercise all necessary diligence to avoid accidents. The appellant cites no authority in support of that theory and, on the contrary, the

case of *People* v. *Blandford,* 23 P.R.R. 580, explains the substantial rules that should govern in such cases.

"Under the authorities we feel bound to hold that any one who attempts to pass pedestrians on the highroad at a high rate of speed and without being sure that such foot passengers are conscious of the approach of the machine, is guilty of gross negligence. He is proceeding without due caution and circumspection. When a death is caused, reckless driving has always been punished by the law of homicide.

"From the evidence, as we have seen, the court had a right to infer that the appellant was driving at a dangerous rate of speed; dangerous in the sense of passing pedestrians not warned and liable to be alarmed. The blowing of the horn was merely the particular thing that made the pedestrians swerve from the course they were taking, but an approaching vehicle, some diversion among themselves, or some other reason might equally have caused them suddenly to cross in front of the machine. The assumption of the defendant seems to have been that merely because he was well to the right and saw the road clear before him, he was justified in passing pedestrians at a high rate of speed without further precaution. This is not the law. A driver of a machine must always have it under such control that he can avoid doing injury to people traveling on the road. He has no right to pass them at a dangerous rate of speed unless justified in believing that they are aware of his approach and are prepared to give him free passage. Any man has the right to walk on the *carretera* and a driver of an automobile who attempts to pass him must have reason to believe that the foot passenger knows of the approach of the machine or that he has been duly warned. An automobile can work more injury than any other vehicle traveling on the road. It has a right to be there, but it must respect the rights of others." 23 P.R.R. 584–85.

"The duty to have an automobile under reasonable control naturally implies that the driver shall exercise the power of control whenever reasonably necessary for the avoidance of injuries to others. If a pedestrian is crossing his course in such proximity that a collision is possible, the speed of the car should be slackened. Moreover, the circumstances may be such, as when a collision is imminent, that reasonable care in the operation of the machine requires the stopping thereof. The driver of an automobile does not necessarily fulfill his duty by proceeding very slowly, but he should bring his machine to a stop if it is necessary in order to prevent

an injury to a pedestrian.'' Huddy on Automobiles, fifth edition, p. 546.

We have considered all of the errors assigned by the appellant and for the reasons stated the judgment of the trial court must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.